TAYLOR, Judge.
Michael L. Hilsabeck pleaded guilty in Jefferson Circuit Court to charges of first degree rape and burglary. He was sentenced to two concurrent fifteen year terms of imprisonment. Following this sentence, Hilsabeck petitioned the Circuit Court of Montgomery County for a writ of habeas corpus. The petition was based primarily upon his statutory ineligibility for correctional incentive time or so-called “good time.” From the trial court’s denial of that petition, Hilsabeck appeals.
The central issue in this appeal is whether the Alabama Correctional Incentive Time Act, 1980 Ala. Acts 80-446 [now codified at § 14-9-41, Code of Alabama (Supp. 1982) ], violates state constitutional requirements for passage of legislation or federal and state equal protection and due process guarantees. Due to the technical nature of portions of Hilsabeck’s arguments, it is *467 necessary to discuss the background and operation of 1980 Ala. Acts 80-446. This law established four classifications within which all inmates of Alabama prisons are classified for purposes of computation and administration of Correctional Incentive Time (CIT):
“(c)(1) Class I is set aside for those prisoners who are considered to be trustworthy in every respect and who, by virtue of their work habits, conduct and attitude of cooperation have proven their trustworthiness. An example of a Class I inmate would be one who could work without constant supervision by a security officer.
“(2) Class II is that category of prisoners whose jobs will be under the supervision of a correctional employee at all times. Any inmate shall remain in this classification for a minimum period of six months before being eligible for Class I.
“(3) Class III is for prisoners with special assignments. They may not receive any of the privileges of Class I and II inmates. Any inmate shall remain in this classification for a minimum period of three months before being eligible for Class II.
“(4) Class IV is for prisoners not yet classified and for those who aré able to work and refuse, or who commit disciplinary infractions of such a nature which do not warrant a higher classification, or inmates who do not abide by the rules of the institution. Inmates who are classified in this earning class receive no correctional incentive time. This class is generally referred to as ‘flat time’ or ‘day-for-day.’ Any inmate shall remain in this classification for a minimum period of 30 days before being eligible for Class III.”
Further, sub-section (c)(5) states that “No inmate may reach any class without first having gone through and meeting the requirements of all lower classifications.”
The statute also expressly establishes the amounts of Correctional Incentive Time deductions available for each class:
“(a) Each prisoner who shall hereafter be convicted of any offense against the laws of the state of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of time to be specified by this article may be entitled to earn a deduction from the term of his sentence as follows:
“(1) Seventy-five days for each 30 days actually served while the prisoner is classified as a Class I prisoner.
“(2) Forty days for each 30 days actually served while the prisoner is a Class II prisoner.
“(3) Twenty days for each 30 days actually served while the prisoner is a Class III prisoner.
“(4) No good time shall accrue during the period the prisoner is classified as a Class IV prisoner.”
The crux of the controversy in this appeal, however, lies in the statutory provision which precludes certain inmates from enjoying the benefits of Correctional Incentive Time. Sub-section (e) states:
“(e) Provided, however, no person may receive the benefits of correctional incentive time if he or she has been convicted of a Class A felony or has been sentenced to life, or death, or who has received a sentence for 10 years or more in the state penitentiary or in the county jail at hard labor or in any municipal jail. No person may be placed in Class I if he or she has been convicted of an assault where the victims of such assault suffered the permanent loss or use or permanent partial loss or use of any bodily organ or appendage. No person may be placed in Class I if he or she has been convicted of a crime involving the perpetration of sexual abuse upon the person of a child under the age of 17 years.
“The court sentencing a person to prison shall note upon the transcript to ac *468 company such prisoner the fact that he or she has been sentenced as a result of a crime that forbids his or her being classified as a Class I prisoner.” (Emphasis supplied)
As the statute provides, Class IV inmates are, for various reasons, not entitled to CIT. Prisoners who have entered the system and have not yet been classified, but are ultimately to be placed in a higher class, are temporarily placed in Class IV. The majority of Class IV inmates, however, are so classified due to their refusal to work, disciplinary infractions, or for reasons related to their sentences in light of sub-section (e).
Testimony of Department of Corrections officials indicated that due to the distinctive eligibility criteria of the various classes, the Department’s computerized record keeping system had to be programmed to reflect whether a prisoner is entitled to earn CIT under the statute. Director of Classifications, John E. Nagle, Jr., testified that numerical degrees one through nine were assigned to individual prisoners to facilitate the computerized system. The various numerical degrees designate whether an inmate is currently eligible or will eventually become eligible for CIT. Those prisoners precluded from the benefits of CIT by sub-section (e) of Act 80-446 are sub-classified in “group nine” of Class IV. At the other end of the spectrum, however, “group one” inmates may earn CIT in accordance with their respective higher class under the terms of the statute. The other numerical sub-classifications have similar meaning within the system.
Alabama is by no means alone in its efforts to install a fair and equitable system for reducing the sentences of worthy inmates, thereby providing the prison system with an effective method of control, while limiting certain serious offenders’ eligibility for CIT. Our survey of the applicable laws throughout the United States revealed that all but four states have some form of sentence reduction or good time plan. We have discovered nine states which have adopted “behavioral classification” systems similar to Alabama’s.[1] See Jacobs, Sentencing By Prison Personnel: Good Time, 30 U.C.L.A. L.Rev. 217 (1982). [We have adopted certain terminology from Professor Jacobs’s comprehensive article, recognizing its particularly useful descriptiveness.]
These “behavioral classification” systems establish specific categories to which inmates of an institution are assigned. An inmate’s classification is related to his record of conduct or his “demonstration of responsibility in the performance of assignments; and a demonstration of a desire for self improvement.” See Va.Code § 53.1-200 (1982).
Each class of inmates within such a system has a specific amount of good time to be awarded each month to inmates who are assigned to that class. Generally, the amount of good time awarded in each class is directly related to the eligibility criteria for prisoners’ membership in the class. Higher classes have more stringent eligibility requirements, but award greater amounts of good time to qualifying inmates. Lower classes have less rigid eligibility criteria and correspondingly smaller good time awards.
All of the states utilizing a “behavioral classification” system have at least one class or category of prisoners which is not entitled to earn good time deductions. This ineligibility for good time deductions may result from the prisoner’s violations of disciplinary rules of the institution, or from administrative necessity (such as new inmates entering prison who are waiting to be classified). Ineligibility may also stem from a statutory directive based upon the length of the prisoner’s sentence or the seriousness of the offense for which he was convicted. See e.g. Ala.Code § 41-9-41 (Supp.1982); and Tenn.Code Ann. § 41-21-229 (Supp.1982).
*469 In the circuit court hearing on his petition for writ of habeas corpus, appellant Hilsabeck testified that his Class IY assignment and ineligibility for good time sentence reduction was strictly a matter of the length of his sentence. The record bears this out. Although the statute also provides for inmates to be classified in Class IV for unwillingness to work or as a result of disciplinary violations, appellant has repeatedly expressed a willingness to work and has not been the subject of disciplinary proceedings. His Class IV status, therefore, results solely from the length of his sentence.
In his appeal, Hilsabeck raises five constitutional grounds for reversal of the judgment of the Circuit Court of Montgomery County denying his petition for writ of habeas corpus. At the outset, we recognize that the trial court is due to be affirmed for appellant’s failure to include an oath verifying the factual allegations of his petition. Ala.Code § 15-21-4; Barker v. State, 437 So.2d 1375 (Ala.Crim.App.1983); O’Such v. State, 423 So.2d 317 (Ala.Grim.App.1982). In the interest of judicial economy, however, and fully aware that the technical deficiencies of appellant’s petition can be averted by another petition, we elect to address the substance of this appeal so as to resolve the legal issues.
I
Hilsabeck first contends that the trial court erred in denying his petition because Act 80-446 contains a provision which broadened the scope of the Alabama Correctional Incentive Time Act, but which was not properly expressed in the title. In particular, appellant claims that the “McDonald Amendment” to Senate Bill 107 violates Ala. Const, art. IV, § 45, in that it so changes the complexion of the bill that the title no longer clearly expresses the nature of the act. We cannot agree.
In considering the legislative history of Act 80-446, we found that there were at least three Senate versions of the act. Ultimately, the “Cook Substitute” which contained the “McDonald Amendment” prevailed to the exclusion of the original bill and the substitute offered by the Judiciary Committee. Journal of the House, May, 1980, pp. 2196-2198.
The legislative history of the act reveals that each Senate version contained provisions designed to restrict the amount of CIT available to specific groups of inmates. Indeed, each version of Senate Bill 107 contained a provision which was very similar to that which is now codified at subsection (e) of § 14-9-41. See Journal of the Senate, May, 1980, pp. 1167-1170.
Before the adoption of the “McDonald Amendment,” sub-section (e) read:
“Provided, however, no person may be placed in Class I....”
Following the Senate’s adoption of the “McDonald Amendment,” sub-section (e) reads:
“Provided, however, no person may receive the benefits of correction incentive time....”
In pertinent part, Ala. Const, art. IV, § 45, states, “Each law shall contain but one subject, which shall be clearly expressed in its title....” The title to Act 80-446 states:
“AN ACT
“To establish the ‘Alabama Correctional Incentive Time Act;’ to provide for earned deductions from penitentiary and hard labor sentences and to establish certain criteria therefor; to create classifications for measurement of such deductions and eligibility therefor; to require minimum sentences prior to parole eligibility; to authorize the commissioner of the department of corrections to restore certain portions of such deductions lost; to authorize the commissioner to issue, promulgate and implement such rules and regulations necessary to implement the provisions of this act; to specifically repeal Sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9-22, 14-9-23, 14-9-24 and 14-9-25 of the Code of Alabama 1975, and all laws or parts of laws conflicting with this act; to make certain *470 exemptions from the provisions of this act for those persons presently serving as inmates in the penitentiary or at hard labor and for those who are convicted for crimes committed prior to the effective date of this act, so as to provide that such prisoners shall earn deductions from sentences as presently provided by law; and to provide habitual offenders shall not be eligible for any deductions from sentences.”
The form of an act’s title is within the province of the legislature, so long as the subject is clearly expressed and the constitution is not offended. Glasscock v. State, 159 Ala. 90, 48 So. 700 (1909); State ex rel. Winter v. Sayre, 118 Ala. 1, 24 So. 89 (1897); Ex parte Pollard, 40 Ala. 77 (1866). The books are replete with cases in which § 45 challenges to acts’ titles have been made. In Watkins v. State, 409 So.2d 901, 903 (Ala.Crim.App.1981), this court stated that the constitution’s clear expression of title requirement “does not mean that the title is to be a complete index and detailed catalog of every clause, section or provision in the act relating to its subject.”
The standard to be applied in considering the constitutionality of an act under § 45 is whether the title “is so misleading and uncertain that the average legislator or person reading the same would not be informed of the purpose of the enactment.” Alabama Education Association v. Grayson, 382 So.2d 501 (Ala.1980); Opinion of the Justices, 294 Ala. 571, 319 So.2d 699 (1975); Dickerson v. State, 414 So.2d 998 (Ala.Crim.App.1982). Similarly, § 45 “is not to be exactingly enforced in such a manner as to cripple legislation or to be enforced with hypercritical exactness, but is to be accorded a liberal interpretation.” Dickerson v. State, 414 So.2d 998, 1006 (Ala.Crim.App.1982); See also B.F. Goodrich Company v. Butler, 56 Ala.App. 635, 324 So.2d 776, cert. denied, 295 Ala. 401, 324 So.2d 788 (1975); Taylor v. Johnson, 265 Ala. 541, 93 So.2d 143 (1957); Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694 (1951); Johnson v. Robinson, 238 Ala. 568, 192 So. 412 (1939); Ballentyne v. Wickersham, 75 Ala. 533 (1883).
Examining the title to Act 80-446 in light of the foregoing standard, we find it to clearly state the subject of the bill. The effect of the original, unamended version of the Act would have been to preclude those individuals set out in sub-section (e) from enjoying the benefits of Class I status. Otherwise stated, it would have allowed those persons convicted of a Class A felony, or those sentenced to life imprisonment, death or a term of ten years or more, to earn correctional incentive time available to Class II and Class III prisoners.
On the contrary, the effect of the Senate’s adoption of the “McDonald Amendment” has been to deny these same individuals the benefits of correctional incentive time. Either form of the provision would have been constitutional in terms of their relation to the act’s title; viz, “AN ACT ... to create classifications for measurement of deductions and eligibility therefor....” The legislature consciously and deliberately chose to adopt the latter in the exercise of its constitutional power to make laws. The trial court did not err in denying appellant’s petition as to this ground.
II
Appellant further contends that the change in Act 80-446 wrought by the “McDonald Amendment” so altered the original purpose of the bill that it violates another constitutional rule, Ala. Const, art. IV, § 61. That provision states, “No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose.”
As with § 45, this constitutional requirement on the lawmaking process has been a fruitful source of litigation. In reviewing an act for compliance with Article IV, § 61, the test is whether the act as passed retains its original general purpose. Hilsabeck correctly points out that the “purpose” of an act within the meaning of § 61 “has been held to mean its general *471 purpose, not mere details through which its purpose is manifested and effectuated.” Opinion of the Justices, 383 so.2d 527 (Ala.1980); Opinion of the Justices, 361 So.2d 536 (Ala.1978); State Docks Commission v. State, 227 Ala. 521, 150 So. 537 (1933). (Emphasis original)
The legislature’s general purpose in passing Act 80-446 was to create a law which prescribed classification and eligibility criteria for reductions in prisoners’ sentences. Despite appellant’s claims to the contrary, the change in Act 80-446 through the vehicle of the “McDonald Amendment” did not alter the general purpose of the Act. Although it substantially limited the number of persons eligible to receive CIT, the change was consistent with the original purpose of the act. The action of the legislature in amending the pending bill was consistent with the requirements of § 61. Denial of appellant’s petition for writ of habeas corpus on this ground did not constitute error.
Ill
Hilsabeck next asserts that Act 80-446, on its face, is violative of equal protection guarantees of the Fourteenth Amendment to the United States Constitution. He claims that the statute is invalid because it treats persons sentenced to ten years or longer prison terms differently than those sentenced to lesser terms by denying them the benefits of correctional incentive time. The underlying issue, therefore, is whether the state system for classification of prisoners under the Act withstands the constitutional test for discriminatory state action.
In analyzing equal protection claims, such as this, we utilize the “rational basis” test prescribed by the United States Supreme Court. See Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Fleming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). Under this test, we must determine (1) whether the classification furthers a proper governmental purpose and (2) whether the classification is rationally related to that purpose. Gideon v. Alabama State Ethics Commission, 379 So.2d 570 (Ala.1980).
Appellant claims that Act 80-446 fails to comport with any rational state objective. He asserts that although the statute is intended to “encourage prison discipline” through the commutation of prison sentences for good behavior, it “defies rationality” by denying such benefits to persons sentenced to prison terms of ten years or more. The state, however, maintains that “the persons similarly situated in the instant case are those with greater than ten year sentences” and that those persons are treated exactly the same under the Act.
At the outset, we recite with approval the rule that statutes, the acts of a co-equal branch of our government, are presumptively constitutional and that they will not be found otherwise unless we are convinced beyond a reasonable doubt of their constitutional infirmity. Alabama Dairy Commission v. Food Giant, Inc., 357 So.2d 139 (Ala.1978); Craig v. State, 410 So.2d 449 (Ala.Crim.App.1981). Furthermore, “the party challenging the constitutionality of a statute has the burden of establishing its invalidity.” Craig, supra at 453.
The title to Act 80-446 states that the intent and purpose of the statute is to create a law which establishes classification and eligibility criteria for correctional incentive time deductions. The appellant acknowledges that the state has a vital interest in promoting discipline within the prison system. However, the state also has an interest in closely supervising and controlling the parole or early release of serious offenders. The power of the state to protect its citizens in this manner is inherent. Act 80-446 was a proper prescription to cure the ills perceived by the legislature and to protect the compelling state interests outlined above. These interests provide the rational basis necessary to sustain the statute against an equal protection challenge.
*472 IV
Appellant next contends that Act 80-446 violates his personal equal protection rights “because inmates with more than ten year sentences, who were sentenced after May, 1980, are not in Class IV status.” We are not satisfied that the allegation is substantiated. Essentially, Hilsa-beck asserts that the Department of Corrections is no longer obeying this provision of the law. Even if this unlikely claim were true, any such conduct, so long as it was not done with intent and as a matter of departmental policy or standard, would not deny Hilsabeck equal protection of the laws. City of Mobile v. Bolden, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980); see also, Scott v. City of Anniston, 597 F.2d 897 (5th Cir.1979).
V
Finally, Hilsabeck claims that the Correctional Incentive Time Act violates the due process guarantees of the Fourteenth Amendment. The standard we apply to this issue is identical to that applied in the equal protection challenge: the inquiries are whether the statute bears reasonable relation to the legislative purpose.
We have already found that the statute is rational and that sufficient relation exists between the state’s interests and the operation of Act 80-446 to sustain its constitutionality as against an equal protection challenge. Likewise, we find that the statute comports with due process requirements, and we affirm the trial court’s denial of appellant’s petition on due process grounds.
The judgment of the Circuit Court of Montgomery County denying appellant’s petition for writ of habeas corpus is due to be, and hereby is, affirmed.
AFFIRMED.
All the Judges concur.

. Those states currently utilizing a “behavorial classification" system are: Alabama, Arizona, Arkansas, Indiana, Mississippi, Tennessee, Texas, Virginia and West Virginia. (The Arkansas "behavorial Classification” system applies only to "meritorious" good time.)