We granted certiorari in this case in order to determine whether Act 80-446 (now codified at Code 1975, § 14-9-41), is violative of either the Alabama Constitution or the United States Constitution.
The salient facts are as follows:
Petitioner Michael Hilsabeck was convicted of robbery in the first degree and rape, and was sentenced to serve two concurrent fifteen-year sentences. Hilsabeck filed a petition for a writ of habeas corpus challenging the validity of Act 80-446, which denied him the benefit of correctional incentive time, commonly known as "good time." The trial court denied petitioner's writ, and the Court of Criminal Appeals affirmed.
In his petition for writ of certiorari before us, Hilsabeck maintains that the Court of Criminal Appeals, 477 So.2d 465, erred; he asserts the following:
1. Act 80-446 violated Article IV, § 45, of the Alabama Constitution because it contained a provision which broadened the scope of the Act beyond that expressed in the title;
2. Act 80-446 violated Article IV, § 61, of the Alabama Constitution (1901) because an amendment to the Act changed the original purpose of the Act;
3. Act 80-446, on its face, violates the equal protection guarantees of the fourteenth amendment;
4. Act 80-446, as applied to petitioner, violates the equal protection guarantees of the fourteenth amendment, because inmates with sentences of ten or more years who were sentenced after petitioner are receiving the benefit of correctional incentive time;
5. Act 80-446 violates the due process guarantees of the fourteenth amendment.
We are of the opinion that petitioner's assertions that Act 80-446 violates the Alabama Constitution are not meritorious. Similarly, petitioner's contentions with regard to the United States Constitution (Issues 3, 4, and 5) are also without merit. We affirm the judgment of the Court of Criminal Appeals.
Petitioner's first argument is that Act 80-446 violates Article IV, § 45, of the Alabama Constitution, which provides in pertinent part:
 "Each law shall contain but one subject, which shall be clearly expressed in its title."
The title to Act 80-446, followed by the pertinent portions of the Act are as follows:
 "To establish the `Alabama Correctional Incentive Time Act'; to provide for earned deductions from penitentiary and hard labor sentences and to establish certain criteria therefor; to create *Page 474 
classifications for measurement of such deductions and eligibility therefor; to require minimum sentences prior to parole eligibility; to authorize the commissioner of the department of corrections to restore certain portions of such deductions lost; to authorize the commissioner to issue, promulgate and implement such rules and regulations necessary to implement the provisions of this act; to specifically repeal Sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9-22, 14-9-23, 14-9-24 and 14-9-25 of the Code of Alabama 1975, and all laws or parts of laws conflicting with this act; to make certain exemptions from the provisions of this act for those persons presently serving as inmates in the penitentiary or at hard labor and for those who are convicted for crimes committed prior to the effective date of this act, so as to provide that such prisoners shall earn deductions from sentences as presently provided by law; and to provide habitual offenders shall not be eligible for any deductions from sentences.
"Be It Enacted by the Legislature of Alabama:
 "Section 1. This act shall be known as the `Alabama Correctional Incentive Time Act.'
 "Section 2. Each prisoner who shall hereafter be convicted of any offense against the laws of the State of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of time to be specified by this act may be entitled to earn a deduction from the term of his sentence as follows:
 "(1) Seventy-five days for each thirty days actually served while the prisoner is classified as a Class I prisoner.
 "(2) Forty days for each thirty days actually served while the prisoner is a Class II prisoner.
 "(3) Twenty days for each thirty days actually served while the prisoner is a Class III prisoner.
 "(4) No good time shall accrue during the period the prisoner is classified as a Class IV prisoner.
 "Within 90 days after the effective date of this act the commissioner of the department of corrections shall establish and publish in appropriate directives certain criteria not in conflict with this act for Class I, II, III, and IV prisoner classifications. Such classifications shall encompass consideration for the prisoner's behavior, discipline, work practices and job responsibilities.
 "Class I is set aside for those prisoners who are considered to be trustworthy in every respect and who, by virtue of their work habits, conduct and attitude of cooperation have proven their trustworthiness. An example of a Class I inmate would be one who could work without constant supervision by a security officer.
 "Class II is that category of prisoners whose jobs will be under the supervision of a correctional employee at all times. Any inmate shall remain in this classification for a minimum period of six months before being eligible for Class I.
 "Class III is for prisoners with special assignments. They may not receive any of the privileges of Class I and II inmates. Any inmate shall remain in this classification for a minimum period of three months before being eligible for Class II.
 "Class IV is for prisoners not yet classified and for those who are able to work and refuse, or who commit disciplinary infractions of such a nature which do not warrant a higher classification, or inmates who do not abide by the rules of the institution. Inmates who are classified in this earning class receive no correctional incentive time. This class is generally referred to as `flat time' or `day-for-day.' Any inmate shall remain in this classification for a minimum period of thirty days before being eligible for Class III. *Page 475 
". . . .
 "Provided, however, no person may receive the benefits of correctional incentive time if he or she has been convicted for a Class A. felony [as defined by Act No. 607, S. 33 of the 1977 Regular Session (Acts 1977, p. 812), as amended] or has been sentenced to life, or death, or who has received a sentence for ten years or more in the state penitentiary or in the county jail at hard labor or in any municipal jail. No person may be placed in Class I if he or she has been convicted of an assault where the victims of such assault suffered the permanent loss or use of any bodily organ or appendage. No person may be placed in Class I if he or she has been convicted for a crime involving the perpetration of sexual abuse upon the person of a child under the age of seventeen years. . . ."
 I
Petitioner contends that, upon reading the title, one could reasonably conclude that the Act establishes criteria for granting incentive good time to all inmates, with the exception of habitual offenders, but that the body of the Act provides that inmates serving ten years or more in prison would also be ineligible for deductions in their sentences. In short, he contends that the title indicates that all inmates except habitual offenders are eligible for incentive time, but that the body of the Act excludes many others, i.e., those serving sentences of ten years or more in prison.
Before we discuss petitioner's specific claim regarding § 45 of the Constitution, we deem it instructive to set out the purpose of § 45 and the guidelines for determining whether that section has been violated by the legislature.
In Knight v. West Alabama Environmental ImprovementAuthority, 287 Ala. 15, 246 So.2d 903 (1971), then-Chief Justice Heflin, with seven members of this Court concurring, spelled out the purpose of § 45 of the Alabama Constitution, and the guidelines for applying that section when construing legislative enactments. He wrote:
 "A lucid discussion of this constitutional provision is found in Opinion of the Justices, 275 Ala. 254, 154 So.2d 12, wherein the following language appears:
 "`. . . One of the purposes of the requirement of Section 45, supra, that the subject of a law shall be clearly expressed in the title, is to prevent surprise or fraud upon the legislature by incorporating in [a bill] provisions not reasonably disclosed by its title, and which might be overlooked, and unintentionally approved in enacting the bill. Opinion of the Justices, 247 Ala. 195, 23 So.2d 505. Another purpose is to fairly apprise the public of the import of the [legislation] so they may be heard. Grayson v. Stone, 259 Ala. 320, 66 So.2d 438.
 "`. . . However, this court is committed to the principle that this requirement as to clear expression of the subject of a bill in the title is not to be exactingly enforced in such manner as to cripple legislation, or is it to be enforced with hypercritical exactness, but is to be accorded a liberal interpretation. Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694; Taylor v. Johnson, 265 Ala. 541, 93 So.2d 143.
 "`. . . When the subject of a bill is expressed in general terms in the title everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in and authorized by it. Dearborn v. Johnson, 234 Ala. 84, 173 So. 864.'
 "This Court in Yielding v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580, held that a statute has but one subject, no matter to how many different matters it relates if they are all cognate, and but different branches of the same subject." 287 Ala. at 22, 246 So.2d at 908. (Emphasis added.) *Page 476 
Examined in the light of these criteria, Act No. 80-446 meets all the requirements of § 45.
The purpose of Act No. 80-446 is "clearly expressed" as one to establish the "Alabama Corrections Incentive Time Act." That alone states that the legislation deals with "good time" for prison inmates. The next two clauses in the title, respectively, state that the Act establishes "certain criteria" for "earned deductions" and creates "classifications for measurement of such deductions and eligibility therefor." (Emphasis added.) That language clearly expresses that the body of the Act will spell out which inmates will and which inmates will not be eligible for earning incentive time. We cannot conclude, therefore, as petitioner suggests, that the legislature, by specifically mentioning in the title "habitual offenders" thereby was required to mention other groups who would also be ineligible.
Clearly, the title to the Act is not "so misleading and uncertain that the average legislator or person reading the same would not be informed of the purpose of the enactment."Opinion of the Justices, 294 Ala. 571, 319 So.2d 699 (1975). We are not here faced with a factual situation like that presented in Alabama Educ. Ass'n v. Bd. of Trustees of the University ofAlabama, 374 So.2d 258 (Ala. 1979), where this Court held that the Education Appropriation Budget Act violated § 45 because a "dues check off" provision appeared in the Act, but was not mentioned in the title.
 II
In a related argument, petitioner asserts that the Act violates Article IV, Section 61, of the Alabama Constitution. Section 61 provides:
 "No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose."
It is well established in Alabama that "purpose" as used in Section 61 of the Constitution means "general purpose," UnionOil Company of California v. Eagerton, 426 So.2d 814 (Ala. 1982). In Opinion of the Justices, 383 So.2d 527, 528 (Ala. 1980), it was written that "the `purpose' of a bill within the section has been held to mean its general purpose, not mere details through which its purpose is manifested and effectuated." (Emphasis in original.) Petitioner claims that the original Act provided that all inmates except habitual offenders were to be classified and receive correctional incentive time, and that an amendment which made inmates serving sentences of ten years or more also ineligible, changed the "purpose" of the Act.
We hold that the amendment to the bill did not change the original purpose of the bill. Blackwell v. State, 230 Ala. 139,162 So. 310 (1935); Comer v. City of Mobile, 337 So.2d 742
(Ala. 1976) (State Ethics Law bill enlarged without changing the original purpose).
 III
Based on the foregoing, we are of the opinion that the judgment of the Court of Criminal Appeals is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
ADAMS, J., dissents, with whom FAULKNER and JONES, JJ., concur.