581 So.2d 444 (1991)
Bill L. GAINES and Janet L. Gaines
v.
HUNTSVILLE-MADISON COUNTY AIRPORT AUTHORITY, a/k/a Huntsville-International Carl T. Jones Airport.
89-1597.
Supreme Court of Alabama.
April 11, 1991.
Lindsey Mussleman Davis of Holt, McKenzie, Holt & Mussleman, Florence, for appellants.
Michael L. Fees of Watson, Gammons & Fees, Huntsville, for appellee.
HORNSBY, Chief Justice.
On December 15, 1988, Bill Gaines was a passenger aboard an airplane that had landed at the Huntsville-International Carl T. Jones Airport. He alleges that as he was walking through the Airport he was injured when he slipped and fell on a flight of stairs. He sued the Huntsville-Madison *445 County Airport Authority (hereinafter "Airport Authority"), alleging that it had negligently maintained the flight of stairs on which he fell. Janet Gaines, Bill Gaines's wife, sued the Airport Authority for loss of consortium.
On July 20, 1989, the Airport Authority moved to dismiss the complaint pursuant to Rule 12(b)(6), A.R.Civ.P., on the grounds that the enabling legislation creating the Airport Authority, Acts of Alabama 1961, Act No. 780 (amended by Acts of Alabama 1969, Act No. 1219), granted it immunity from negligence actions. The trial court granted the Airport Authority's motion to dismiss.
Bill Gaines subsequently amended his complaint. The amendment asserted a claim based on negligence and wantonness against the Airport Authority and alleged that Act No. 780 was unconstitutional. Gaines also averred in his amended complaint that the attorney general of the State of Alabama must be served with a copy of the action and all pleadings, pursuant to Ala.Code 1975, § 6-6-227. The record reflects that the attorney general was served with the proceedings in this case, but it does not indicate that the State made any response.
The Airport Authority again moved to dismiss the action on the grounds that Act No. 780, as amended by Act No. 1219, granted it immunity from actions alleging negligence and those alleging wantonness as well. The trial court granted the Airport Authority's motion, holding that Act No. 780 "provided the Authority with immunity for negligence and wantonness and immunity from this action sounding in tort." We affirm in part; reverse in part; and remand.
The Airport Authority is a public corporation organized and existing pursuant to Act No. 780. The title to the act reads as follows:
"To authorize and make provision for the incorporation in any county having a population of not less than 110,000 nor more than 165,000 according to the last or any subsequent federal decennial census, of an authority as a public corporation for the purpose of acquiring, constructing, enlarging, improving, maintaining, developing and operating airports, heliports, airport buildings and facilities...."
Section 10 of that act provides as follows:

"Suits Against the Authority or Any Director. No action or suit shall be brought or maintained against the authority or any director thereof, for or on account of the negligence of such authority or director, or its or his agents, servants or employees, in or about the construction, maintenance, operation, superintendence or management of any airport, heliport or other facility owned or controlled by the authority."
Section 10 of this act was later amended by Acts of Alabama 1969, Act No. 1219, to provide:
"No action or suit shall be brought or maintained against the authority or any director thereof, for or on account of torts arising out of simple negligence, willful negligence, wanton negligence, intentional negligence or willfulness, wantonness, recklessness or intentional misconduct of such authority or director, or its or his agents, servants, or employees in or about the construction, maintenance, operation, superintendence or management of any airport, heliport or other facility owned or controlled by the authority."
Airport authorities created under Article 1 of Chapter 3 of Title 4 and Chapter 4 of Title 4 (Ala.Code 1975, §§ 4-3-1 through -24, and §§ 4-4-1 through -16) are immune from negligence actions brought against them or their directors. Ala.Code 1975, § 4-3-7, § 4-4-4.
Gaines argues that Act No. 780 and Act No. 1219 unconstitutionally deny him the due process and equal protection guaranteed under the Fourteenth Amendment to the United States Constitution and Article I, § 13, of the Alabama Constitution. Specifically, Gaines alleges that these acts are arbitrary and capricious because, he says, the legislature has "unreasonably divided airport patrons and airport tort-feasors into *446 arbitrary classes." He says, "If one were injured at an airport where the county population was less than 110,000 through the willful negligence of an airport employee, conceivably he could recover while an identically injured patron at Appellee's airport could not."
In considering the plaintiff's constitutional challenge to Act No. 780 and Act No. 1219, this Court must apply the following standard:
"`[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'"
Home Indemnity Co. v. Anders, 459 So.2d 836, 840 (Ala.1984), quoting Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944).
This Court has recognized that "[i]t is the prerogative of the legislature, within constitutional limits, to authorize a public corporation to sue or be sued." Weeks v. East Alabama Water, Sewer & Fire Protection Dist., 401 So.2d 26, 27 (Ala.1981), citing Scotti v. City of Birmingham, 337 So.2d 350 (Ala.1976). In regard to municipalities and counties, "[n]either is the creation of the Constitution, both are creatures of statute. The fact and nature of their respective existence, as well as the duties, powers, and limitations, are governed solely by legislative mandate...." Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975); see also Nix & Vercelli, Immunities Available in Alabama for Cities, Counties and Other Governmental Entities, and Their Officials, 13 Am.J.Trial Advoc. 615 (1989).
In Jackson v. City of Florence, 294 Ala. 592, 600, 320 So.2d 68, 75 (1975), this Court abolished municipal tort immunity and in doing so emphasized "the authority of the legislature to enter the field, and further recognize[d] its superior position to provide with proper legislation any limitations or protections it deems necessary." In this case the legislature has exercised its authority. Through Act No. 780, it has provided for the establishment of airport authorities in counties with populations between 110,000 and 165,000 and, through Act No. 1219, has seen fit to accord those authorities immunity from all actions in tort.
Although we have often recognized that the legislature has the authority to enact legislation limiting municipal, county, or public corporation liability (see, for example, Weeks, supra) we have also held that there are constitutional limits to the legislature's authority to do so. In Chandler v. Hospital Authority of Huntsville, 500 So.2d 1012 (Ala.1986), this Court addressed the issue of discriminatory classification as it related to tort immunity for municipal hospital building authorities. In Chandler, we held that Article 5 of Chapter 21 of Title 22 ("Municipal Hospital Building Authorities") (Ala.Code 1975, § 22-21-130 et seq.) was unconstitutional because it denied equal protection to patients of hospital building authorities established under Article 5.
Of the five Articles authorizing the establishment of public hospitals and facilities (Articles 3, 4, 5, 6, and 11 of Chapter 21 of Title 22) (Ala.Code 1975, §§ 22-21-50 through -191, §§ 22-21-310 through -344), only Article 5 prescribes immunity from tort actions. In Chandler the plaintiff alleged that negligence and wanton conduct on the part of Huntsville Hospital and its administrators caused her baby's death. The trial court granted the defendant's motion for summary judgment on various grounds, including the ground that Huntsville Hospital was organized under Article 5, which provided the hospital authority with immunity from tort actions.
The plaintiff appealed, arguing that the statute granting tort immunity to hospital building authorities created by Article 5 was unconstitutional. The plaintiff argued that Article 5 deprived persons injured by *447 the negligence of a hospital organized under it of a remedy that was available to those injured by the negligence of hospitals organized under Articles 3, 4, 6, and 11. The lead opinion in Chandler held that the tort immunity provision of Article 5 was unconstitutional because Article 5, in comparison with Articles 3, 4, 6, and 11, created a classification that afforded unequal protection to patients injured in an Article 5 hospital by depriving them of a remedy in tort for such injuries.
Likewise, the issue in this case is whether Act No. 780, as amended by Act No. 1219, unconstitutionally creates a classification that affords unequal protection to persons injured in an airport operated by an authority organized under Act No. 780 by depriving them of a remedy in tort[1] that is available to persons injured in airports operated by an authority organized under Article 1 of Chapter 3 and Chapter 4 of Title 4 (Ala.Code 1975, §§ 4-3-1 through -24, §§ 4-4-1 through -16).
The analysis employed in the lead opinion in Chandler is equally applicable to this case:
"This Court addressed the issue of discriminatory classification in Tyson v. Johns-Manville Sales Corp., 399 So.2d 263 (Ala.1981). In that case, Johns-Manville asserted that Act 80-566, enlarging the statute of limitations for bringing civil actions for injuries or deaths due to asbestos exposure, unreasonably discriminated against manufacturers and sellers of asbestos products by singling them out as a class and that, as a result, this legislation had an unconstitutional effect. Recognizing that inherent in governmental regulation is legislative classification, we pointed out that such classification is permissible if reasonably related to the promotion of a valid legislative purpose:
"`[T]he Fourteenth Amendment does not deny to the states the power to treat different classes of persons in different ways. The classification must not be unrelated to the objective of the statute and `must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).
"`"Classification is an inherent power of the Legislature but it must not be arbitrary or unreasonable. In order to justify interference by the courts with the wide discretion which the Legislature has in such matters, it should appear that the interests of those generally affected by the act, as distinguished from those of a particular class, require such interference."' In Re: Opinion of the Justices, 252 Ala. 559, 561, 42 So.2d 56 (1949).

"`Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438, 439 (1972).'
"`A statutory discrimination between classes is held to be relevant to a permissible legislative purpose if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); State v. Pure Oil Company, 256 Ala. 534, 55 So.2d 843 (1951).' 399 So.2d at 271-272.
"Should a legislative classification burden the exercise of a fundamental right, or suggest prejudice against a racial or other minority, heightened judicial scrutiny is required and the `strict scrutiny' test will apply. Where statutory classifications do not involve a suspect class or fundamental right, however, as in this case, the proper standard in analyzing an allegation of unequal protection is the `rational basis' standard. Applying the rational-basis test in Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976), the United States Supreme Court stated:

*448 "`We need state only briefly our reasons for agreeing that strict scrutiny is not the proper test for determining whether the mandatory retirement provision denies appellee equal protection. San Antonio School District v. Rodriguez, 411 U.S. 1, 16 [93 S.Ct. 1278, 1287, 36 L.Ed.2d 16] (1973), reaffirmed that equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class....'
"`....
"`We turn then to examine this state classification under the rational-basis standard. This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Dandridge v. Williams, [397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)].' (Footnotes omitted)."
"In applying this `relaxed' standard to the instant case, we look to see if, under any perceivable set of facts, the statutory discrimination in Article 5, which gives immunity to hospitals organized under that statute, is relevant to and justified by a permissible legislative purpose. Counsel for Huntsville Hospital is unable to suggest any rational basis for the distinction, and we do not discern any.
"In Tyson, supra, the Court, in applying the test quoted above, found:
"`The health, safety, and the provision of a remedy for Alabama citizens who are exposed to asbestos and thereby suffer injury are legitimate and reasonable objectives of the legislature. The classifications specified in the act are Alabama citizens "suffering the effects of any long-term disease process... caused by exposure to asbestos" and "a third-party tortfeasor ... proximately caus[ing]" the damages, Act No. 80-566, § 1. These classifications bear a "fair and substantial relation" to the above legislative objectives.' 399 So.2d at 272."
500 So.2d at 1015-16.
In this case, Article 1 of Chapter 3 and Chapter 4 of Title 4 accomplish the same basic purpose as Act No. 780. However, airports organized under Article 1 of Chapter 3 and under Chapter 4 are immune only from negligence actions, but airports organized under Act No. 780, as amended by Act No. 1219, are immune from all actions in tort. As noted above, the proper standard in analyzing an allegation of unequal protection is the "rational basis" standard. Applying this "relaxed standard," we look to see if, under any perceivable facts, the statutory discrimination in Act No. 1219, which gives complete tort immunity to airport authorities organized under Act No. 780, is relevant to and justified by a permissible legislative purpose.
In this case, counsel for the Airport Authority has been unable to suggest a rational basis for the statutory discrimination that exists between Act No. 780, as amended by Act No. 1219, and Article 1 of Chapter 3 and Chapter 4, and we are unable to discern any. Therefore, we find that Act No. 780, as amended by Act No. 1219, by its terms and by comparison to Article 1 of Chapter 3 and to Chapter 4, does create a classification that affords unequal protection to persons injured in an airport operated by an authority organized under Act No. 780 by depriving them of a remedy for any tort.
Because Act No. 780 and Act No. 1219 create an impermissible classification, we now address the issue of remedying the constitutional infirmity. We adopt the same approach taken by the lead opinion in Chandler and strike as unconstitutional that portion of Act No. 1219 (amending section 10 of Act No. 780) that provides the Airport Authority immunity as to torts other than negligence. Chandler, 500 So.2d at 1018. Therefore, that portion of the trial court's judgment dismissing the claim alleging wantonness is hereby reversed.
*449 The judgment is affirmed insofar as it dismisses the claim based on negligence. The cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ALMON, SHORES, ADAMS and INGRAM, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.
MADDOX, Justice (concurring in part; dissenting in part).
I concur in the judgment insofar as it affirms the judgment of the trial court; but I dissent from the judgment insofar as it reverses on the constitutional issue presented, for the same reasons stated in my dissenting opinion in Chandler v. Hospital Authority of Huntsville, 500 So.2d 1012 (Ala.1986).
HOUSTON and STEAGALL, JJ., concur.
NOTES
[1] Persons injured in an airport operated by an authority organized under Article 3 or 4 could sue the authority for injuries caused by its wanton conduct, whereas persons injured in an airport operated by an authority organized under Act 780, as amended by Act No. 1219, may not sue the airport authority for any action in tort.