Plaintiff Tammy R. Chandler appeals from a summary judgment entered in favor of Defendant Hospital Authority of the City of Huntsville (operator of Huntsville Hospital).
Two issues are presented on appeal: 1) Whether this Court should overrule Geohagan v. General Motors Corp., 291 Ala. 167,279 So.2d 436 (1973), and allow a wrongful death action excontractu; and 2) whether the provision granting immunity from tort actions contained within the statutory authority under which the Defendant hospital is organized is constitutional, as against an equal protection challenge, in light of four other public hospital statutes that permit tort actions. We affirm in part (as to Issue No. 1), because we do not overrule Geohagan;
reverse in part (as to Issue No. 2), finding a violation of the guarantee of equal protection; and remand.
At 3:00 on the afternoon of August 16, 1983, Tammy Chandler's 15-day-old baby was examined at the Ambulatory Care Center (ACC) in Huntsville. The baby's symptoms were high fever, irritability, crying, and "grunting sounds." ACC's doctors referred the baby to the Huntsville Hospital emergency room. At 4:00 p.m., Huntsville Hospital refused to admit or treat the baby because Plaintiff had neither medical insurance nor the $54 emergency room fee. At 8:00 that same evening, when the baby's symptoms had become more severe, Plaintiff again took her baby to Huntsville Hospital, where treatment and admission were again refused. Finally, at 11:44 that night, Huntsville Hospital's doctors examined and admitted Plaintiff's baby. The baby died the next afternoon from spinal meningitis.
Plaintiff sued ACC and its administrator and doctors and Huntsville Hospital and its administrator and doctors, alleging that her baby's death was caused by the negligent or wanton conduct of these defendants. Plaintiff also claimed that Huntsville Hospital had breached an implied contract by failing to treat her baby with the degree of skill and care required by hospitals in that area, and had breached an express contract *Page 1014 
with the United States government under the Hill-Burton Act, which provides money for hospital services to the needy. Plaintiff stated that her baby was an intended recipient of Hill-Burton funds.
The trial judge dismissed the claims against ACC and granted summary judgment in favor of the doctors. No appeal was taken from those rulings. The trial judge also granted summary judgment to the Hospital Authority and the administrator of Huntsville Hospital, and stated the basis of his decision, in substance, as follows: A) In Alabama, a specific statutecreates the right to sue for wrongful death. The Alabama Supreme Court has held that the wrongful death statute provides for a tort action and not a contract action for wrongful death (Geohagan, supra); therefore, Plaintiffs' claim in contract is not valid. B) Another Alabama statute, Code 1975, §22-21-137(2), provides municipal hospital building authorities with immunity from suit and, therefore, prevents Plaintiffs' tort claims. Further, said the trial court, § 22-21-137(2) is not unconstitutional. C) The hospital administrator, as an agent of the Hospital Authority, is afforded the same immunity from suit. Chandler appeals only as to the Hospital Authority.
 THE CONTRACT CLAIM
We have made a careful review of both the facts of this case, with respect to Chandler's contract claim for the wrongful death of her son, and the holding in Geohagan, supra. We reaffirm the decision in Geohagan; therefore, we affirm the trial court's holding dismissing Chandler's contract claim.
 THE TORT CLAIM
The provisions of Article 5 of Chapter 21 of Title 22 ("Municipal Hospital Building Authorities") (Code 1975, §22-21-130, et seq.) were enacted in 1961. Act No. 109, 1961 Ala. Acts. The Hospital Building Authority for the City of Huntsville was incorporated on August 3, 1961, under those statutory provisions now compiled in Article 5.
In 1978 the Huntsville City Council, by resolution, amended the certificate of incorporation of the Huntsville Hospital Building Authority. The amendment changed the name of the Huntsville Hospital Building Authority to "Hospital Authority of the City of Huntsville," but sought to continue the day-to-day operations of the Hospital under the powers conferred by Article 5. Therefore, concluded the trial judge, Chandler's cause of action in tort — a claim for the alleged negligence of Huntsville Hospital — was due to be dismissed, because of immunity from tort actions provided the Hospital in § 22-21-137(2) of Article 5.
Chandler argues that § 22-21-137(2), granting hospital building authorities immunity from tort actions, is unconstitutional because it deprives persons injured by the negligence of a hospital organized under Article 5 of equal protection of the law as mandated by the State and Federal Constitutions. This argument is premised on the statutory scheme reflected in Title 22, Chapter 21, Code 1975, which chapter contains five separate articles authorizing the organization and operation of public health facilities in Alabama, of which only Article 5 affords immunity from tort actions.
The immunity provision of Article 5 is found in § 22-21-137, which enumerates the "powers and capacities" of a hospital building authority formed under Article 5:
 "2. To maintain actions and have actions maintained against it by others in any form of litigation other than an action ex delicto, and to defend any litigation brought against it."
The question of immunity for an authority organized under Article 6 ("County and Municipal Hospital Authorities") is addressed in § 22-21-178:
 "No hospital organized under this article shall have governmental sovereignty or immunity."[1] *Page 1015 
Article 6 also specifically provides that corporations authorized under this article may sue and be sued, both in tort and in contract. § 22-21-179.
Similarly, Article 4 ("County Hospital Boards and Corporations," § 22-21-70, et seq.) provides that a county hospital board or corporation has the power "[t]o maintain actions and have actions maintained against it and to defend action [sic] maintained against it," (§ 22-21-77(2)). Article 11 ("Health Care Authorities," § 22-21-310, et seq.) allows a health care authority "[to] sue and be sued in its own name in civil suits and actions, and to defend suits and actions against it, including suits and actions ex delicto and ex contractu, subject, however, to the provisions of chapter 93 of Title 11 ['Tort Claims and Judgments against Local Governmental Entities'], which chapter is hereby made applicable to the authority," (§ 22-21-318(a)(2)). Additionally, Article 3 (§22-21-50, et seq.), the statutory authority for the establishment of "Public Hospital Associations," contains no immunity provision. Thus, of the several statutes authorizing the establishment and operation of public hospitals and facilities (Articles 3, 4, 5, 6, and 11), only Article 5 prescribes immunity from tort actions.
This Court addressed the issue of discriminatory classification in Tyson v. Johns-Manville Sales Corp.,399 So.2d 263 (Ala. 1981). In that case, Johns-Manville asserted that Act 80-566, enlarging the statute of limitations for bringing civil actions for injuries or deaths due to asbestos exposure, unreasonably discriminated against manufacturers and sellers of asbestos products by singling them out as a class and that, as a result, this legislation had an unconstitutional effect. Recognizing that inherent in governmental regulation is legislative classification, we pointed out that such classification is permissible if reasonably related to the promotion of a valid legislative purpose:
 "[T]he Fourteenth Amendment does not deny to the states the power to treat different classes of persons in different ways. The classification must not be unrelated to the objective of the statute and 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).
 " 'Classification is an inherent power of the Legislature but it must not be arbitrary or unreasonable. In order to justify interference by the courts with the wide discretion which the Legislature has in such matters, it should appear that the interests of those generally affected by the act, as distinguished from those of a particular class, require such interference.' In Re: Opinion of the Justices, 252 Ala. 559, 561, 42 So.2d 56 (1949).
 "Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438, 439
(1972).
 "A statutory discrimination between classes is held to be relevant to a permissible legislative purpose if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); State v. Pure Oil Company, 256 Ala. 534, 55 So.2d 843 (1951)." 399 So.2d at 271-72.
Should a legislative classification burden the exercise of a fundamental right, or suggest prejudice against a racial or other minority, heightened judicial scrutiny is required and the "strict scrutiny" test will apply. Where statutory classifications do not involve a suspect class or fundamental right, however, as in this case, the proper standard in analyzing an allegation of unequal protection is the "rational basis" standard. Applying the rational-basis test inMassachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314,96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976), the United States Supreme Court stated: *Page 1016 
 "We need state only briefly our reasons for agreeing that strict scrutiny is not the proper test for determining whether the mandatory retirement provision denies appellee equal protection. San Antonio School District v. Rodriguez, 411 U.S. 1, 16 [93 S.Ct. 1278, 1287, 36 L.Ed.2d 16] (1973), reaffirmed that equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. . . .
". . . .
 "We turn then to examine this state classification under the rational-basis standard. This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Dandridge v. Williams, [397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)]." (Footnotes omitted.)
In applying this "relaxed" standard to the instant case, we look to see if, under any perceivable set of facts, the statutory discrimination in Article 5, which gives immunity to hospitals organized under that statute, is relevant to and justified by a permissible legislative purpose. Counsel for Huntsville Hospital is unable to suggest any rational basis for the distinction, and we do not discern any.
In Tyson, supra, the Court, in applying the test quoted above, found:
 "The health, safety, and the provision of a remedy for Alabama citizens who are exposed to asbestos and thereby suffer injury are legitimate and reasonable objectives of the legislature. The classifications specified in the act are Alabama citizens 'suffering the effects of any long-term disease process . . . caused by exposure to asbestos' and 'a third-party tortfeasor . . . proximately caus[ing]' the damages, Act No. 80-566, § 1. These classifications bear a 'fair and substantial relation' to the above legislative objectives." 399 So.2d at 272.
Here, however, the basic purposes of Articles 3, 4, 5, 6, and 11 are essentially identical — the authorization of public
boards, corporations, or associations for the purpose of owning and operating public health facilities. See § 22-21-50 (Article 3); § 22-21-71 (Article 4); § 22-21-131 (Article 5); §22-21-171 (Article 6); and § 22-21-311(13) (Article 11). The public entities authorized and organized under these articles also share a substantial identity of corporate powers, including succession in their corporate names; use of a corporate seal; adoption of by-laws; purchase and maintenance of property and equipment; mortgage or lease of corporate property; investment of corporate assets; and selection and training of medical and administrative personnel.
Finding no basis for the immunity classification of §22-21-137(2) in the structure or basic powers and operations of the hospitals organized under Articles 3, 4, 5, 6, and 11, we must now, therefore, determine if any rational basis exists for this discriminatory immunity provision in the makeup of the prospective patients of these hospitals — the persons who would be directly affected by the immunity provision of Article 5. That is, does § 22-21-137(2) create an impermissible classification as between patients injured in hospitals organized under Articles 3, 4, 6, and 11 and those injured in a hospital organized under Article 5? We find that §22-21-137(2), by its very terms, and in comparison with the provisions of Articles 3, 4, 6, and 11, does create a classification which affords unequal protection to patients injured in an Article 5 hospital by depriving them of a remedy in tort for such injuries.
The question, then, again becomes whether there is any rational basis for such classification. The statute, as indicated above, suggests no such basis,[2] and we find *Page 1017 
no rational basis either in the eligibility of prospective patients or in those patients' ability or inability to pay for hospital services. Indeed, whether or not prospective patients know a hospital was organized under Article 3 or 4 or 5 or 6 or 11, and whether or not, if tortiously injured while in such a public hospital, they will have a remedy for their injuries, it is most probable that they will simply choose the hospital facility closest to their residences.
Because § 22-21-137(2) creates an impermissible classification, we now address the issue of remedying this constitutional infirmity. We find the principle enunciated inOrr v. Orr, 374 So.2d 895 (Ala.Civ.App. 1979), to be instructive. That is, when the state enacts a statutory scheme which creates an unequal application of law as among two or more classes of citizens without a rational basis for the classification, the discriminatory portions of such a statute are constitutionally impugned.
In 1979, the Court of Civil Appeals, on remand and direction from the United States Supreme Court, announced its decision in the case of Orr v. Orr, supra. The United States Supreme Court, in Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306
(1979), found that Code 1975, §§ 30-2-51, -52, and -53 were unconstitutional. Those sections, which comprise the law regarding alimony determinations in divorce cases in Alabama, made no provision for an alimony award to a "needy husband," and, therefore, were found to be violative of the constitutional guarantee of equal protection.
The opinion of the Court of Civil Appeals, in adopting the holdings of the United States Supreme Court in Orr v. Orr,440 U.S. 268, 99 S.Ct. 1102, and Welsh v. United States,398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), addressed the judicial options for remedying the constitutional defect:
 "Where a statute is constitutionally infirm on the basis of underinclusiveness, a court may satisfy the Constitution's commands by either extending benefits to those excluded from the scope of its coverage or by invalidation of the statute in its entirety. Orr, supra; Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). In Welsh, supra, the Supreme Court stated:
 " 'Where a statute is defective because of underinclusion there exist two remedial alternatives; a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion. . . . (Citations omitted).' 398 U.S. at 361, 90 S.Ct. at 1807-1808, Harlan, J., concurring.
". . . .
 "The choice between invalidation of a statute or expansion of the scope of its applicability requires, of necessity, an ascertainment of the predominant legislative purpose underlying the statute's enactment. Beal [v. Beal, 388 A.2d 72
(Me. 1978)]. That is to say, given the nature and substance of the statute, its relevant economic, social, and historical implications, can it be concluded that benefits should be terminated to the class of persons whom the legislature intended to benefit." Orr, at 374 So.2d 896-97.
Thus, in Orr, once the equal protection violation had been found, the court resorted to the "underinclusion" doctrine as the method of remedying the constitutional defect. As between the two options, the Court of Civil Appeals, on remand from the United States Supreme Court, elected to cure the "underinclusion" defect by including within the statute's operative effect the class discriminated against.
To be sure, the instant appeal is not a classical "underinclusion" case. Rather, the denial of equal protection here results from the direct conflict between a statute affording immunity to one kind of public hospital and four other statutes providing *Page 1018 
for public hospitals without immunity from tort liability; therefore, we cannot here simply judicially include a discriminated-against class within the embrace of those statutes that do not include the immunity provision. The only option remaining is to strike as unconstitutional the immunity provision of Article 5 (§ 22-21-137(2));[3] and we find that §22-21-137(2) is entirely severable from the remainder of Article 5. See Ballew v. State, 292 Ala. 460, 296 So.2d 206
(1974), cert. den., 419 U.S. 1130, 96 S.Ct. 816, 42 L.Ed.2d 830
(1975).
Therefore, that portion of the trial court's judgment dismissing Chandler's tort claim is hereby reversed, and this cause is remanded for further proceedings in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ALMON and ADAMS, JJ., concur.
SHORES and BEATTY, JJ., concur in the result.
TORBERT, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.
[1] We have copied this section exactly as it appears in the Code, but we note that it contains an obvious inadvertence: the last four words should read "governmental or sovereign immunity."
[2] We acknowledge that it is not necessary tofind the rational basis in the language of the statute. It is sufficient if a rational basis exists and can be perceived in the spirit and operation of the statute.
[3] We are not here called upon to invalidate any portion of Article 5 other than § 22-21-137(2).