**Carol MORRIS, Administratrix of the Estate of Linda Louis Grimes, Deceased, Plaintiff–Appellant,**

v.

**SSE, INC., Defendant–Appellee.**

No. 89–7690
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Sept. 26, 1990.

Robert H. Tyler, Denton & Tyler, Biloxi, Miss., for plaintiff-appellant.

Paul W. Brock, Joe E. Basenberg, Walter T. Gilmer, Jr., Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for defendant-appellee.

Before HATCHETT, Circuit Judge, HILL * and FAIRCHILD **, Senior Circuit Judges.

HILL, Senior Circuit Judge:

The appellant, an administratrix, challenges the district court's conclusion that

Alabama law governed her claim for breach of warranty. We affirm.

### FACTS

The appellant is administratrix for the estate of Linda Louise Grimes, a resident of Mississippi. In November, 1982, Grimes traveled to Grand Bay, Alabama in order to skydive. On November 14, Grimes rented parachute equipment, including a Sentinel Mark 2000, an automatic activation device, from Gulf Coast Air Sports ("Gulf Coast"), an Alabama entity. The appellee, SSE, (a corporation organized under the laws of Pennsylvania and with an office address in New Jersey), manufactured the device and sold it to a dealer or distributor; that distributor, in turn, transferred the device to Gulf Coast, where Grimes arranged to rent it, along with the rest of her parachuting equipment. Grimes died in a skydiving accident on that same day, and her administratrix claims that the device malfunctioned, wrongfully causing her death.

### PROCEEDINGS IN THE DISTRICT COURT

In July, 1985, two years and eight months after Grimes' death, the appellant initiated this wrongful death action in the District Court for the Southern District of Mississippi. The appellant's Amended Complaint set forth three theories of recovery against the appellee: (1) negligence, (2) strict liability, and (3) breach of warranties under Alabama's Uniform Commercial Code ("U.C.C.").

The district court, sitting in diversity, concluded that it lacked personal jurisdiction over SSE, and transferred the action to the District Court for the Southern District of Alabama. SSE then filed, in that forum, a Motion to Dismiss or, in the Alternative, for Summary Judgment, urging that that court also lacked personal jurisdiction over the appellee. The district court agreed, and dismissed the action for failure to establish a *prima facie* case of personal jur-

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

isdiction. On appeal, the Eleventh Circuit reversed and remanded. 843 F.2d 489.

The appellee then answered the Amended Complaint and filed a Motion for Summary Judgment, contending that Alabama law governed the appellant's claim, and that the appellant's claim was untimely. On August 11, 1989, the district court granted that motion, entering a judgment in favor of SSE.

This appeal followed.

## DISCUSSION

The appellant now challenges the district court's conclusion that Alabama law governed the decedent's warranty claim. The appellant specifically contends that we should apply a separate choice-of-law analysis to each segment of her claim. Thus, according to appellant, we should first apply the Alabama Code's four-year statute of limitations to her warranty claim under Alabama's U.C.C., and then apply Mississippi substantive law in analyzing that claim.

### The Breach of Warranty Claim

▮▮▮ As we have noted, the appellant filed not only a breach of warranty claim, but two tort claims, asserting both negligence and strict liability. The appellant apparently concedes in her brief that the district court properly granted summary judgment as to these tort claims; we therefore address, for the purpose of this appeal, only her claim for breach of warranty.[1]

▮▮▮ We begin by noting that we can analyze the appellant's breach of warranty claim by two approaches. Under the first, (and simpler), approach, we would recognize that, (as with the appellant's tort claims), Alabama's substantive law governs this claim. *Klaxon*, 313 U.S. 487, 61 S.Ct. 1020. Alabama courts, moreover, have held that actions for wrongful death can *only* arise under Alabama's wrongful death statute. *See Geohagan v. General Motors Co.*, 291 Ala. 167, 279 So.2d 436, 440 (1973) ("We hold that no contractual cause of action for wrongful death is created by our Uniform Commercial Code arising from a breach of warranty, and that actions for wrongful death can arise in this state and be processed only under our wrongful death act"). *See also Chandler v. Hospital Authority of City of Huntsville*, 500 So.2d 1012, 1014 (Ala.1986). Since Alabama's wrongful death act, as we have noted, imposes a two year state statute of limitations, we would hold, under this approach, that appellant's claims are time-barred.

▮▮▮ The second approach, although conceptually more involved, yields the same result. As appellant points out, in *Price v. Litton Systems, Inc.*, 784 F.2d 600, 608 (5th Cir.1986), the Fifth Circuit held that the district court should have "addressed which state's laws should govern the breach of warranty claims" in an analysis separate from the determination of the appellant's tort claims.[2]

---

1. At any rate, we would easily dispose of the appellant's tort claims. In a diversity action such as this one, Alabama's substantive law, including its choice of law rules, governs the case. *Klaxon Co. v. Stentor Electric Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, the district court properly applied Alabama's traditional *"lex loci delicti"* choice of law rule. Since the injury occurred in Alabama, the district court also properly applied Alabama's wrongful death statute, which has a two-year limitations period. Ala.Code § 6–5–410 (1975). As we have noted, the appellant failed to assert her claims within two years of the decedent's death.

2. We note that the district court in *Price* referred to the Mississippi Supreme Court's holding in *Boardman v. United Services Automobile*

*Association*, 470 So.2d 1024, 1031 (Miss.1985). In *Boardman*, the Mississippi Supreme Court articulated a segmented, "issue-by-issue" approach to its choice of law decisions:

> First the law of a single state does not necessarily control every issue in a given case. We apply the center of gravity test *to each question presented*, recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable.

(Emphasis supplied). *Boardman*, 470 So.2d at 1031. A review of Alabama case law reveals that the Alabama courts have not utilized *Boardman*'s approach. Nonetheless, the Fifth Circuit expressed its holding "[r]egardless of the specific applicability of the Mississippi U.C.C. conflict

If we follow the lead of the Fifth (and other) Circuits in this matter, then we would review separately, for choice of law purposes, the appellant's breach of warranty claim. In Count III of the Complaint, the appellant alleged that SSE defectively designed or constructed its automatic activation device and thus, that SSE breached express and/or implied warranties.

Alabama has adopted the Uniform Commercial Code statutory choice of law rule for warranty claims. This statute requires an Alabama court to determine whether the transactions which form the basis of a warranty claim bear an "appropriate relation" to the state of Alabama before that court may apply Alabama law:

> Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. *Failing such agreement this title applies to transactions bearing an appropriate relation to this state.*[3]

Ala.Code § 7-1-105(1) (1975) (emphasis supplied). Although some states define "appropriate relation" in the comments section of their codes, Alabama's Code is silent as to its meaning, leaving its interpretation to judicial decision.

Appellant now urges that we apply a "governmental interests" interpretation of the term, "appropriate relation," an approach now sanctioned by the principles of the Second Restatement of Conflicts of

Laws. As the Fifth Circuit noted in *In Re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1169 n. 38 (5th Cir. 1987), "[i]nterest analysis is a two-step process[:]

> First the court must determine whether a true or false conflict of interests exists. This determination is made by examining the various competing interests of the states involved with a particular issue. If a false conflict exists, the law of the state with the exclusive interest is applied and the second step is unnecessary. If a true conflict exists, the law of the state with the most significant relationship to a particular issue is applied in accordance with the principles of the Second Restatement of Conflicts. (citations omitted). This two-step process must be performed for each significant issue in the case. (citations omitted). The process of analyzing separate issues within a single case for choice of law decisions and applying different laws to different parts of the same case is known as depacage...."

Appellant now urges that no true conflict exists between Alabama and Mississippi in this matter. As the appellant notes, Mississippi law provides a contract remedy for wrongful death; Alabama law does not. Appellant thus argues that Alabama has little, if any, interest in the remedies afforded a nonresident plaintiff against a nonresident defendant.

 While we might agree that the scenario we have detailed would enable

---

of laws rule," (*Price*, 784 F.2d at 604), and we agree that its holding may have general application for other courts as well.

**3.** The phrase "appropriate relation" represents a revision of the original language of the Uniform Commercial Code. Apparently, the drafters of the 1952 version of the Code intended, (at least in the absence of a choice by the parties), for its language to have as wide an application as possible. In that vein, Section 1-105 originally outlined a list of contacts which might arise from any transaction or contract covered by the U.C.C., and provided that the U.C.C. would apply whenever one or more of those contacts involved a forum state which had enacted the U.C.C. *See* Uniform Commercial Code, § 1-105(6) (1952 version).

The original version, therefore, would have required only a single minimal contact with any part of the transaction in order to enable a state to apply the U.C.C. to the whole transaction. In response to immediate, widespread criticism, however, the drafters revised the section to include the "appropriate relation" language that we interpret today. In the comments to the 1962 version, however, the drafters also noted that courts need not feel bound by their prior conflicts law, which might preclude application of the U.C.C. in many cases. Uniform Commercial Code, § 1-105, comment 3 (1962). *See generally,* Dyer & Ellis, "Conflicts of Laws and the 'Appropriate Relation' Test of Section 1-105 of the Uniform Commercial Code," 40 Geo.Wash.L. Rev. 797 (1972).

some courts to utilize a "governmental interests" analysis, we have searched the Alabama case law in vain for any sign that an Alabama court would apply such a test. In fact, so far at least, no Alabama court has ventured *any* interpretation of the Uniform Commercial Code's "appropriate relation" language. One federal district court in Alabama, interpreting Alabama law, as we do, in diversity, has concluded that Alabama's test under the U.C.C. would prove that of "most significant relationship to the transaction." *Simmons v. American Mutual Liability Insurance Co.*, 433 F.Supp. 747, 748 (S.D.Ala.1976),[4] *aff'd*, 560 F.2d 1022 (5th Cir.1977). In tort and wrongful death actions, Alabama continues to apply the traditional choice of law principles of *lex loci delicti. See e.g., Norris v. Taylor*, 460 So.2d 151 (Ala.1984); *Bodnar v. Piper Aircraft*, 392 So.2d 1161 (Ala.1980). In contract actions, Alabama applies the rule of *lex loci contractus. Hughes Associates Inc. v. Printed Circuit Corp.*, 631 F.Supp. 851 (N.D.Ala.1986); *Ex Parte Owen*, 437 So.2d 476 (Ala.1983). Under any of these tests, an Alabama court could apply only Alabama law. Alabama law would govern under *lex loci delicti*, for example, since the injury occurred in Alabama. Alabama law would also govern under *lex loci contractus*, since Ms. Grimes rented the product in Alabama, and since the owner of the product purchased it in Alabama. Finally, even under a "significant relationship" or significant contacts approach, Alabama law again would clearly govern, since, as we have noted, (1) the death occurred in Alabama, (2) Grimes rented and used the device in Alabama, (3) distributors sold and delivered the device in Alabama, and (4) various customers and consumers regularly used the device in Alabama. Thus, under any of these theories, the parties must resort to the law of Alabama to govern the appellant's claim.

The appellant, however, nonetheless urges us to follow the lead of the Fifth Circuit in applying a governmental inter-

ests analysis to the facts we have described. That we will not do. We note, in fact, that the Fifth Circuit followed that approach only because "Louisiana[, the state at issue in that case,] has adopted an 'interest analysis/most significant relationship' approach to choice-of-law decisions." *Air Crash*, 821 F.2d at 1169 n. 38. Our review of the Alabama case law, on the other hand, reveals, if anything, its courts' deliberate avoidance of that approach. *See e.g., Norris v. Taylor*, 460 So.2d at 153, (Jones, J., concurring) ("We have not adopted the 'significant interests' rule, nor do I contend for the adoption of this minority view"). We do note that in *Bodnar v. Piper Aircraft Corp.*, 392 So.2d at 1163, the Alabama Supreme Court recognized that "[m]any authorities and courts have advocated abandoning *lex loci delicti* as a conflicts rule in products liability and other tort actions[,]" and listed the "governmental interests" test as one of several options it could also apply. Nonetheless, although the court acknowledged that the new approaches were intriguing, it adopted none of these alternative theories:

> Some of the arguments advanced by the scholars and some courts in adopting a more flexible conflicts of law rule are compelling and may well find favor in this jurisdiction in the proper case, but the case before us is not such a case.

*Bodnar*, 392 So.2d at 1163. If Alabama adopts another conflicts rule, we will apply it; otherwise we will not reinterpret Alabama's choice-of-law theories without a clear directive from its courts.

### CONCLUSION

We therefore affirm the judgment of the district court.

**AFFIRMED.**

---

4. The district court's use of the "significant interests" test in *Simmons* puzzles us, since it bases its application on an earlier ruling by a district court in *Ideal Structures Corp. v. Levine*

*Huntsville Development Corp.*, 251 F.Supp. 3, 8 (N.D.Ala.1966). We reversed that ruling in *Ideal Structures Corp. v. Levine Huntsville Development Corp.*, 396 F.2d 917 (5th Cir.1968).