**Dennis THOMAS and Jack Thomas, Plaintiffs,**

v.

**Milton VAUGHN, Defendant.**

**Civ. A. No. 95–D–481–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 20, 1995.

Paul Christian Sasser, Jr., Montgomery, AL, for plaintiffs.

Milton Vaughn, pro se.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is plaintiffs' motion for summary judgment filed on August 25, 1995. On August 28, 1995, the court ordered the defendant to respond to plaintiffs' motion by September 11, 1995. The defendant failed to respond to this order. In reference to this, the court contacted the defendant via telephone on October 19, 1995, but the defendant declined to talk to the court. After careful consideration of the arguments of the plaintiffs, the relevant case law, and the record as a whole, the court finds that plaintiffs' motion for summary judgment is due to be granted.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds fifty thousand dollars exclusive of interest and costs and the citizenship of both of the plaintiffs is diverse from the citizenship of the defendant. Venue is proper pursuant to 28 U.S.C. § 1391(a), because the defendant resides in this district, and the alleged acts or omissions at issue occurred within the Middle District of Alabama.

## STATEMENT OF FACTS

In 1985, Advanced Cellular Company ("Advanced"), an Alabama partnership, was formed to apply for non-wireline cellular telephone licenses, or authorizations, to be awarded through a lottery system by the Federal Communications Commission ("FCC"). Defendant Milton Vaughn ("Vaughn"), an Alabama resident, was designated as Advanced's managing partner. Plaintiffs Jack and Dennis Thomas ("the Thomases"), both Pennsylvania residents, were also Advanced partners. The plaintiffs assert that the Advanced partnership agree-

ment required, among other things, for Vaughn to inform them of any licenses that had been granted or any alliances that had been made with other entities to obtain licenses. The agreement also gave them a right to vote on any partnership business arising after an alliance was formed. On October 28, 1986, Vaughn sent a letter to all Advanced partners informing them that Advanced had received an interest in eighteen Metropolitan Service Area ("MSA") markets and that he would keep them informed on any future business developments.

Also in 1986, Vaughn formed several other Alabama partnerships, including Rubana Cellular Company South Central ("Rubana South"), Rubana Cellular West One ("Rubana West") and others (together "Rubana"). Vaughn designated himself as managing partner of each one of these partnerships. These partnerships applied for non-wireline cellular telephone authorizations in various Rural Service Area ("RSA") markets through the FCC lottery system. The Thomases did not discover the existence of any of these partnerships until nearly two years later. Despite their lack of knowledge, the plaintiffs assert that Vaughn executed a document purporting to make Advanced a Rubana South general partner. The plaintiffs also allege that Vaughn executed a document purporting to make Advanced a partner in Rubana West without their knowledge. The plaintiffs further claim that Vaughn might have listed Advanced as a general partner in several other Rubana partnerships.

During the spring and summer of 1988, plaintiff Dennis Thomas formed several Pennsylvania partnerships, including Progressive Cellular III B–2 ("Progressive 2") and Progressive Cellular III B–3 ("Progressive 3"). Progressive 2 applied for a non-wireline cellular telephone authorization in the Alaska 3–Haines RSA market ("Alaska market"), a market in which Rubana West had also applied. Progressive 3 applied for a non-wireline cellular telephone authorization in the Oklahoma 4–Nowata RSA market ("Oklahoma market"), a market in which Rubana South had also applied.

On September 23, 1988, Progressive 2 won the FCC lottery for the Alaska market; however, on October 25, 1988, the FCC dismissed Progressive 2's application and the Alaska market was then awarded to RJL Cellular partnership ("RJL"). Progressive 2 successfully appealed the dismissal and its application was reinstated. RJL has since filed a petition with the FCC to reconsider its decision to reinstate Progressive 2 on the grounds that Progressive 2 violated the FCC's "one application per market" rule because Advanced was listed as a Rubana West partner. No FCC action has been taken on this matter, and the Alaska market has not been awarded to Progressive 2.

In December, 1988, the Thomases discovered that Vaughn had executed a document purporting to make Advanced a partner in Rubana South. Plaintiffs allege that they had no knowledge at that time of any of Vaughn's actions concerning any other Rubana partnership, including Rubana West. The Thomases immediately disavowed Vaughn's actions and withdrew from Advanced retroactive to May 23, 1988.

On August 9, 1989, Progressive 3 won the FCC lottery for the Oklahoma market. Subsequently, Jackson Cellular ("Jackson") partnership petitioned the FCC to deny Progressive 3's Oklahoma market application alleging that Progressive 3 had violated the FCC's "one application per market" rule because Advanced was listed as a Rubana South partner in Rubana South's application for that market. The FCC accepted Jackson's argument and dismissed Progressive 3's Oklahoma market application. Appeals were taken through all administrative and judicial levels, but the FCC's dismissal was not reversed.

In *Thomas v. Vaughn,* Civil Action No. 92–D–352–N (M.D.Ala.1992) (De Ment, J.) ("*Thomas I*"), this court made findings of fact based on provisions of the Advanced partnership agreement. In fact, *Thomas I* involved essentially the same facts as presented in this case, the only distinctions being that *Thomas I* related to a different non-wireline cellular telephone market and involved a different Rubana partnership.

Even though the Rubana partnerships which Advanced was allegedly a part of was

formed to compete for RSA markets, the court found in *Thomas I* that the sole purpose of the Advanced partnership was to compete for licenses in specified MSA markets rather than RSA markets. The court further found that in cases where Advanced allied itself with another entity that was granted a license, or if Advanced was granted a license individually, all partners had a right to vote on how Advanced would proceed. The court also found that Vaughn, without informing the Thomases, entered Advanced as a named partner in the Rubana South partnership, which subsequently applied for licenses in RSA markets. The court adopts these findings of fact in the present case.

The Thomases seek a judgment declaring that Vaughn violated the general partnership agreement he had with Advanced by failing to notify the Thomases of his decision to make Advanced a partner in the Rubana West, Rubana South, and other Rubana partnerships. The Thomases further contend that they should have been given a right to vote on whether to become partners with any other partnership. Because Vaughn did not follow either of these procedures, the Thomases request the court to find that Advanced cannot be legally deemed a partner in any Rubana partnership, and therefore, cannot be liable for any actions of any Rubana partnerships.

## JUSTICIABILITY

■ In the case at bar, the plaintiffs seek a declaratory judgment of their status in the Advanced partnership. The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. The mere "existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed.R.Civ.P. 57. Both the Declaratory Judgment Act and Rule 57 should be liberally construed "to afford[ ] one threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy ... by affording an adequate and expedient means of declaring the rights and obligations of litigants in one action instead of several." *McDougald v. Jenson,* 786 F.2d 1465, 1481 (11th Cir.1986). When a party files an action for declaratory judgment in a federal court while an administrative proceeding is ongoing, "[i]f the declaratory judgment affords the plaintiff a remedy, the mere bringing of the suit is an act of independent legal significance" and the court should decide the question. *Stern v. State Loan and Finance Corp.,* 205 F.Supp. 702, 706 (D.Del.1962). Furthermore, "the plaintiff's motive under such circumstances has no relevance on whether the court should exercise its judgment in taking cognizance of the lawsuit or whether the court should decide it." *Id.* Thus, exhaustion of an administrative remedy is unnecessary if the administrative remedy would not resolve his or her claim commenced in federal court. *Haitian Refugee Ctr. v. Civiletti,* 503 F.Supp. 442, 468 (S.D.Fla.1980).

■ In the present case, the plaintiffs acknowledge that an administrative proceeding is pending with the FCC concerning whether the Alaska market will be awarded to Progressive 2; however, the plaintiffs request the court to afford them a remedy that is distinct from any remedy available through the FCC. Specifically, the Thomases ask the court to decide whether they may be liable, as general partners, for lawsuits filed against one or more Rubana partnerships for damages arising from actions of Rubana or its partners before the Thomases withdrew from Advanced. This issue is not only relevant to whether the Thomases could have participated in the lottery for the Alaska market, but is also critical to whether the Thomases can participate in future FCC lotteries for other RSA markets and to whether and to what extent the Thomases might be liable due to Advanced's status as a putative Rubana partner. Furthermore, if the court decides the question in this case, it will save the Thomases from having to go to court in the future to relitigate this same issue. Thus, the court

finds that the plaintiffs' motion for summary judgment in this case presents a justiciable question.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court has noted, on the other hand, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative; summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). At the summary judgment stage, the court must construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1607, 26 L.Ed.2d 142 (1970). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (citing Fed.R.Civ.P. 56(c)).

## DISCUSSION

■ In a diversity action, a federal court should apply the substantive law of the state in which the court sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Similarly, a federal court should adopt the choice of law rules of the state in which it sits. *Klaxon Company v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, the court must follow the choice of law rules of the state of Alabama.

■ Under Alabama law, any conflicts between state laws are resolved with regard to the *lex loci* rule. *Morris v. SSE, Inc.,* 912 F.2d 1392 (11th Cir.1990). Because the acts or omissions of the defendant occurred in the state of Alabama, the court finds that Alabama substantive law should govern in this case.

The Alabama Partnership Act provides, in part, that:

> The rights and duties of the partners in relation to the partnership shall be determined, except as modified by the partnership agreement between them, by the following rules: ...
>
> (7) No person can become a member of a partnership without the consent of *all* the partners.

Ala.Code 1975, § 10–8–43(7) (emphasis added). Thus, under the Alabama Partnership Act, Advanced could not be made a partner to any Rubana partnership without the express consent of Advanced absent any provision in the partnership agreement providing otherwise.

The relevant portion of the Advanced partnership agreement to this lawsuit contains the following provision in paragraph 12:

> [I]n the event a license is granted to the partnership or in the event the partnership is in alliance with any other entity in which

a license is granted, *all partners shall have an equal right to vote on how the partnership business shall proceed thereafter.*

Enclosure 1 attached to Aff. of Dennis Thomas of June 28, 1995 (emphasis added). Vaughn followed this provision of the partnership agreement when he pursued MSA markets for Advanced. On October 28, 1986, Vaughn informed Advanced's partners by a memorandum that Advanced had received an interest in eighteen MSA markets, stating that "We have joined alliances in each of the Market Statistical Areas and were successful in winning an interest in the following markets: [listing omitted].... *I will keep you informed concerning our partnership as events occur."* Enclosure 2 attached to Aff. of Dennis Thomas of June 28, 1995 (emphasis added). However, Vaughn failed to follow this procedure when he executed a "Declaration of Contribution and Signature Page" purporting to make Advanced a Rubana West general partner. Tab 5 attached to Aff. Of Dennis Thomas. Vaughn also executed a "Declaration of Contribution and Signature Page" purporting to make Advanced a Rubana South general partner without notifying all Advanced partners. Tab 6 attached to Aff. of Dennis Thomas.

The court finds that the partnership agreement required Vaughn to give notice of his actions on behalf of Advanced regarding the Rubana partnerships. In fact, the court believes that the clause requiring a vote of the partners was intended to prevent just the type of unilateral action taken by Vaughn in listing Advanced as a partner in Rubana partnerships so that Advanced partners would be protected from the consequences of such action. Although the court recognizes, and the plaintiffs concede, that Advanced could have become a partner in another partnership without a unanimous vote of Advanced's partners, notification of all Advanced partners would have given the Thomases the opportunity to withdraw from Advanced to avoid the very problem central to this lawsuit.

Thus, the court finds that Advanced's consent to join in a partnership with any of the Rubana partnerships was not, and could not

have been, obtained without notifying all Advanced partners of the agreement. Consequently, under the terms of the agreement, Vaughn acted outside the scope of his authority as managing partner of Advanced when he listed Advanced as a partner in the Rubana partnerships because the Thomases did not have the opportunity to vote on the partnership business regarding any Rubana partnerships. Therefore, the court finds that Vaughn's actions did not cause Advanced to become a partner with any Rubana partnership under Ala.Code § 10–8–43(7).

In support of the court's findings above, the court notes that the Alabama Supreme Court recently held that a partnership "is never established by implication or operation of law, at least in the situation where the dispute concerning the existence of a partnership is between the parties." *Vergos v. Waterman Building Partnership,* 613 So.2d 383, 389 (Ala.1993) (citing with approval, *Waters v. Union Bank of Repton,* 370 So.2d 957, 960 (Ala.1979)). In *Vergos,* the plaintiff, seeking a declaration that he was not a partner, had signed a partnership agreement, considered himself a partner, acted like a partner, held himself out to others as a partner, made capital contributions to cover losses by the partnership, and was considered to be and was treated as a partner by the other partners and the defendant in that case. Moreover, all other partners in the partnership had clearly consented to the plaintiffs' admission as a partner. Nevertheless, the Court held that a partnership was not formed with the plaintiff because the partnership agreement contained a clause stating that "[n]o variation hereof shall be deemed valid unless in writing and signed by all of the partners," and the agreement to join the plaintiff had not been signed by two minority partners. *Id.* at 388. The Court made its finding despite the fact that the two minority partners had clearly consented to the plaintiff's admission as a partner. *Id.* According to the Supreme Court of Alabama, the plaintiff's admission would be a "variation," and concluded that, despite all objective indicators of an intent to create a partnership relationship, the plaintiff was not a partner because the amendment had not been signed by all existing partners. *Id.*

In this proceeding, the Thomases did none of the acts done by the plaintiff in *Vergos;* instead, upon learning of Vaughn's actions, they took all possible steps to distance themselves from those actions, including immediate withdrawal from Advanced retroactive to May 23, 1988. No provision existed in the Advanced partnership agreement for Vaughn to agree that Advanced would become a partner with the Rubana partnerships without notifying all Advanced partners and allowing them an opportunity to vote or withdraw from Advanced. Thus, applying the principles of *Vergos,* the court finds Advanced cannot be deemed a partner of any Rubana partnership because the unilateral action of Vaughn violated the Advanced partnership agreement and the Alabama Partnership Act.

Based on the foregoing, the court finds that the plaintiffs' summary judgment motion is due to be granted. A judgment and declaration in accordance with this memorandum opinion will be entered separately.

### JUDGMENT AND DECLARATION

In accordance with the attached memorandum opinion and Rule 54 of the *Federal Rules of Civil Procedure,* it is CONSIDERED, ORDERED, and ADJUDGED that summary judgment be and the same is hereby GRANTED in favor of plaintiffs Dennis and Jack Thomas and against defendant Milton Vaughn.

It is further CONSIDERED, ORDERED, ADJUDGED and DECLARED, as prayed for in the complaint, (1) that Advanced Cellular Company was not, based on any actions of Milton Vaughn, caused to become a partner in Rubana Cellular Company South Central, in Rubana Cellular Company West One, or in any other Rubana partnership formed by defendant Milton Vaughn; (2) that Advanced Cellular Company has not ever been a partner in Rubana Cellular Company South Central, in Rubana Cellular Company West One, or in any other Rubana partnership formed by defendant Milton Vaughn; and, (3) that plaintiffs Dennis and Jack Thomas have not ever had any legal interest in any cellular RSA market application filed with the FCC by Rubana Cellular Company South Central, Rubana Cellular Company West One, or any other Rubana partnership formed by defendant Milton Vaughn.

It is further CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against the defendant, for which let execution issue.